*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN SAVADJIAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civ. Action No. 18-16381 (FLW) |
| v. | : | |
| | : | |
| MARLENE CARIDE, JOHN/JANE DOES 1-10, and XYZ Corporations 1-10, | : | OPINION |
| | : | |
| Defendants. | : | |

**WOLFSON, Chief Judge**:

Pending before the Court is a motion filed by Defendant Marlene Caride ("Commissioner Caride"), the Commissioner of the State of New Jersey Department of Banking and Insurance ("Department"), to dismiss the Complaint of Plaintiff John Savadjian ("Plaintiff"). Plaintiff is the respondent in an administrative enforcement action brought by the Department seeking to revoke his license to produce insurance and impose fines against him (the "Administrative Action").

Plaintiff brings claims against Commissioner Caride pursuant to 18 U.S.C. § 1983, alleging that by modifying an evidentiary ruling in the Administrative Action, Commissioner Caride violated Plaintiff's constitutional rights. In the instant matter, Commissioner Caride moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that she is entitled to absolute immunity or, alternatively, to qualified immunity. For the following reasons, Commissioner Caride's motion is **GRANTED**.

I. BACKGROUND

For the purposes of this motion to dismiss, factual allegations set forth in the Complaint are taken as true, and the Court will only recount facts relevant to this motion. On April 10, 2014,

the Department issued an Order to Show Cause, subsequently amended, asserting that Plaintiff had violated provisions of the New Jersey Insurance Producer Licensing Act, N.J.S.A. 17:22A-26 to -48. (Compl. ¶ 11, ECF 1-1.) Plaintiff contested the Order to Show Cause, and the Department transmitted the matter to the New Jersey Office of Administrative Law ("OAL") for a contested case hearing to be conducted before an Administrative Law Judge ("ALJ"), consistent with the New Jersey Administrative Procedure Act ("NJ APA"). *See* N.J.A.C. 1:1-3.2. (Compl. ¶¶ 12, 14-15.)

In advance of the hearing before the OAL, Plaintiff filed a motion in *limine* that sought to exclude recordings of certain telephone calls made by Plaintiff. (Compl. ¶¶ 16-18.) On December 19, 2016, the ALJ made an oral ruling precluding the Department from authenticating the recordings, thereby rendering them inadmissible. (Compl. ¶¶ 19-24.) The Department sought interlocutory review of the ALJ's ruling pursuant to N.J.A.C. 1:1-14.10(a). (Compl. ¶ 25.). On February 27, 2017, the then-Acting Commissioner of the Department issued a Decision and Order modifying the ALJ's ruling and remanded the matter to the OAL for continued proceedings. (Compl. ¶ 26.) Plaintiff unsuccessfully sought leave to appeal the Acting Commissioner's Decision and Order with the Appellate Division of the New Jersey Superior Court. (Compl. ¶ 30.)

After the hearing continued on remand, the ALJ issued an order dated August 29, 2018, barring further testimony regarding authentication of the telephone calls. (Compl. ¶ 36 & Ex. A.) The Department again sought interlocutory review by the Commissioner of the Department pursuant to N.J.A.C. 1:1-14.10(a). On October 16, 2018, Commissioner Caride issued a 59-page Decision and Order No. A18-111, which, based on the record before the ALJ, determined that the Department had satisfied the requirements for authentication and admissibility of the challenged evidence. (Compl. ¶ 46 & Ex. B.) Commissioner Caride's decision is the subject of this suit.

2

In response to Decision and Order No. A18-111, on November 5, 2018, Plaintiff filed a motion seeking leave to appeal with the Appellate Division of the New Jersey Superior Court. (Compl. ¶ 30; Certification to Def. Mot., Ex. E, ECF 6-3.) That motion was denied, and on December 18, 2018, Plaintiff sought review of the Appellate Division's denial before the New Jersey Supreme Court. (Supp. Certification to Def. Mot., Ex. A, ECF 11-2.) Plaintiff's motion for leave to appeal to the New Jersey Supreme Court was pending at the conclusion of briefing in the instant motion. (Def. Reply at 3, ECF 11-1.)

Meanwhile, on October 23, 2018, Plaintiff filed this Complaint against Commissioner Caride, in her individual capacity, in the Superior Court of New Jersey, Law Division, Mercer County. The Complaint asserts claims against Commissioner Caride for violations of Plaintiff's constitutional rights under 18 U.S.C. § 1983 and seeks damages and other relief with respect to Decision and Order No. A18-111. (Compl. ¶¶ 58-110.) On November 21, 2018, Commissioner Caride removed the Superior Court action to this Court, and the instant motion ensued. In her motion, Commissioner Caride argues that she is entitled to, *inter alia*, absolute immunity. The Court will turn to that issue.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although the Court must accept the allegations in the complaint as true, it is not compelled to

accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III. ABSOLUTE IMMUNITY

It is well settled that judges have absolute immunity from claims for damages arising out of the performance of their judicial duties. *Stump v. Sparkman,* 435 U.S. 349, 355-56 (1978) (citing *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)). Absolute judicial immunity also extends to nonjudicial officers for claims relating to the exercise of judicial functions. *Butz v. Economou*, 438 U.S. 478, 512-13 (1978). Specifically, "quasi-judicial" absolute immunity may extend to individuals tasked with performing functions that are judicial in nature, such as administrative law judges and agency hearing officers when performing adjudicative functions within executive agencies. *Id.*; *see also Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003) (stating that "[q]uasi-judicial absolute immunity attaches when a public official's role is 'functionally comparable' to that of a judge.")

Here, Commissioner Caride argues that she is immune from any claims arising from her reversal of the ALJ's decision, because quasi-judicial immunity applied when she acted "in her statutory job function to review decisions of an administrative law judge." (Pl. Mot. at 18.) In response, Plaintiff argues that Commissioner Caride is not entitled to immunity because she "was not performing judicial functions when issuing" Decision and Order No. A18-111. (Def. Opp. at 17.) Plaintiff further argues that Commissioner Caride was "acting outside of her recognized legal

4

authority" when she reversed the ALJ's decision. (*Id.*) The Court has examined each of these arguments, and finds that Commissioner Caride is entitled to quasi-judicial absolute immunity.[1]

A. **Commissioner Caride's Responsibilities Are "Functionally Comparable" to That of a Judge.**

"Quasi-judicial absolute immunity attaches to public officials whose roles are 'functionally comparable' to that of a judge." *Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003) (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)). Such immunity "flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985) (internal quotation marks and citations omitted); *Forrester v. White*, 484 U.S. 219, 224 (1988) ("[W]e examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions."). Where the judicial nature of a government actor's function is not clear on its face, "a court must consider whether the official acted independently and what procedural safeguards attended his/her decision-making process." *Hamilton*, 322 F.3d at 785.

In *Cleavinger*, the Supreme Court devised a non-exhaustive list of six factors that are "characteristic of the judicial process" to evaluate whether a government actor's function qualifies as "judicial" for the purpose of determining immunity. *See Cleavinger*, 474 U.S. at 202 (citing *Butz* v. *Economou*, 438 U.S. 478, 512 (1978)). Those factors are: (i) the need to assure that the individual can perform his functions without harassment or intimidation; (ii) the presence of

---

[1] Commissioner Caride also contends that she is entitled to qualified immunity. Because the Court finds that she is entitled to absolute immunity, it need not address whether this second ground warrants dismissal.

5

safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (iii) insulation from political influence; (iv) the importance of precedent; (v) the adversary nature of the process; and (vi) the correctability of error on appeal. *Id*. The Third Circuit Court of Appeals has remarked that these factors are the "touchstones" of the quasi-judicial immunity inquiry. *See Keystone Redev. Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (applying factors when finding immunity for members of a state licensing board); *Dotzel v. Ashbridge*, 438 F.3d 320, 324-27 (applying factors when finding immunity for members of a municipal board of supervisors).

Applying the factors from *Cleavinger*, the Court concludes that on balance Commissioner Caride was performing a function comparable to that of a judge when she issued Decision and Order No. A18-111.[2]

### (1) Harassment/Intimidation

The first of the factors is "the need to assure that the individual can perform his functions without harassment or intimidation." *Cleavinger*, 474 U.S. at 202. In *Butz v. Economou*, for example, the Supreme Court recognized that administrative law judges, like other judges, must be extended quasi-judicial immunity so that they "can perform their respective functions without harassment or intimidation" from dissatisfied parties. 438 U.S. at 512; *see also Forrester*, 484 U.S. at 226 ("[T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have.") Thus, the cloak of immunity is designed to prevent a situation in which decision-makers "act with an excess of caution or otherwise . . . skew their decisions in ways that result in less than full fidelity to the

---

[2] The Court notes that while the parties refer to these factors, they nevertheless did not perform an analysis of each factor in light of the underlying facts. As such, the Court will discuss the parties' arguments in the context of the appropriate factors.

objective and independent criteria that ought to guide their conduct," *id*. at 223, out of a fear of personal monetary liability.

Commissioner Caride issued Decision and Order No. A18-111 on October 16, 2018. Just one week later, on October 23, 2018, Plaintiff filed this action against Commissioner Caride in her individual capacity. The very existence of this lawsuit, and the speed at which it was filed by a dissatisfied party, warns of the potential for harassment and intimidation that potentially face public officials in Commissioner Caride's position. This factor weighs in favor of immunity.

### (2) Procedural Safeguards

The second factor is the presence of procedural safeguards that reduce the need for private lawsuits. In *Butz*, the Supreme Court opined that a finding of immunity for administrative law judges was supported by the fact that "agency adjudication contain[s] many of the same safeguards as are available in the judicial process," noting in particular that "[t]he proceedings are adversary in nature"; "they are conducted before a trier of fact insulated from political influence"; "[a] party is entitled to present his case by oral or documentary evidence"; "the transcript of testimony and exhibits together with the pleadings constitute the exclusive record for decision"; "[t]he parties are entitled to know the findings and conclusions on all of the issues of fact, law, or discretion presented on the record"; and the administrative judge "may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions." 438 U.S. at 513. In *Dotzel* and *Keystone*, the Third Circuit found the following additional procedural safeguards sufficient in the context of quasi-judicial immunity: (1) notice to the parties and the public, (2) public hearings, (3) specific procedures for conducting hearings, (4) the right to counsel, (5) the use of subpoenas and oaths, (6) the issuance of written decision, and (7) the preparation of transcripts. *Dotzel*, 438 F.3d at 326; *Keystone*, 631 F.3d at 98.

In reviewing and modifying the ALJ's evidentiary ruling, Commissioner Caride performed a function similar to an appellate judge in a trial court proceeding, which itself is a common safeguard available in the judicial process. Like an appellate judge, Commissioner Caride made her decision upon the evidentiary record before the ALJ, which record was produced through the OAL process after a full adversarial hearing in which procedural safeguards were followed.[3] *Starr v. City of Lakewood*, No. 09-1390, 2009 U.S. Dist. LEXIS 39352, at *11 (D. Colo. Apr. 27, 2009) ("[T]he function of reviewing the findings of fact and conclusions of the hearing officer after a full adversarial hearing is clearly judicial in nature as appellate judges routinely review the record of prior proceedings to determine if there was error."). Although the typical case applying quasi-judicial immunity involves a public official performing functions comparable to a trial judge (*e.g.*, an administrative judge or hearing officer), the Court finds no reason why an official performing appellate-like functions should be any less entitled to immunity. *See Williams v. Dep't of Pub.*

---

[3] The parties are afforded many of the same procedural safeguards in the OAL process that are available in a formal judicial process. These safeguards include a hearing with an opportunity to present evidence and argument, N.J.S.A. 52:14B-9(a), (c)-(f), the right to be represented by counsel, N.J.A.C. 1:1-5.1 to -5.6; discovery and subpoenaing of witnesses, N.J.A.C. 1:1-10.1 to -10.5, 11.1 to -11.5; motion practice, N.J.A.C. 1:1-12.1 to -12.7; pre-hearing conferences, N.J.A.C. 1:1-13.1 to -13.2; and application of the New Jersey Rules of Evidence, with some exceptions, N.J.S.A. 52:14B-10(a), N.J.A.C. 1:1-15.1 to -15.12; use of expert witness testimony, N.J.A.C. 1:1-15.9; and interlocutory appeals to the head of the agency, N.J.A.C. 1:1-14.10. *Compare*, N.J Court Rules 4:10-1, *et seq*. (discovery); 1:9-1, *et seq*. (subpoenaing witnesses); 1:6-2, *et seq.*, 4:6-2, *et seq*. (motion practice); 4:25-1, *et seq*. (pre-trial conferences with the court); New Jersey Rules of Evidence.

Plaintiff relies on *DiBlasio v. Novello*, 344 F.3d 292 (2d Cir. 1994), but that case is distinguishable because similar safeguards were not present there. In *DeBlasio*, the Second Circuit determined that the Commissioner of the New York State Department of Health was not entitled to quasi-judicial absolute immunity when she summarily suspended a physician's license without due process. Unlike in this case, where the proceedings before the OAL mirror that of a typical state court proceeding and Commissioner Caride's review was akin to that of an appellate judge, the summary suspension proceeding in *DiBlasio* "lack[ed] the hallmarks and safeguards of a judicial proceeding." *Id*. at 299.

*Safety of Del.*, No. 82-0738, 1983 U.S. Dist. LEXIS 10644, at *13 (D. Del. Dec. 19, 1983) (finding absolute immunity for a state agency head who, when reviewing the decision of a hearing board, "functioned in a role somewhere between that of a trial judge . . . and an appellate judge"); *Stein v. Disciplinary Bd. of Supreme Court of New Mexico*, No. 04-0840, 2006 WL 8444215, at *18 (D.N.M. May 31, 2006) ("The purposes behind judicial immunity apply equally to appellate judges."). Hence, this factor also weighs in favor of immunity.

### (3) Political Influence

The third factor involves the insulation of the decision-making process from political influence. In *Butz*, the Supreme Court deemed probative to the question of immunity whether the process of adjudication at issue "is structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." 438 U.S. at 513. In *Dotzel*, the Third Circuit elaborated that the "key question" is "whether the [official] here can be removed from office based on the substance of their official work." 438 F.3d at 326. The *Dotzel* court found that this factor weighed in favor of immunity because the officials there were "removable during their terms only for cause," which the court found was "[l]ike judges and unlike most executive officers." *Id*. In *Keystone*, the Third Circuit listed additional protections that can insulate against political pressure, including prohibitions from political involvement and the requirement that officials recuse themselves if their impartiality is called into question. 631 F.3d at 98.

Here, the relevant statutory provision sets forth that Commissioner Caride "serve[s] at the pleasure of the Governor" and, therefore, she presumably can be removed from office with or without cause. *See* N.J.S.A. 17:1-2(a). Importantly, Commissioner Caride has identified no other provisions or rules that might insulate her office against political pressure in the context of

reviewing ALJ decisions. Although this factor does not weigh in favor of immunity, the Court notes, however, that the impact of any potential political pressure Commissioner Caride may encounter is assuaged by the above-delineated procedural safeguards and by the appeal process discussed, *infra*. Moreover, the Third Circuit has noted that "not every [f]actor must be satisfied for an official to be entitled to quasi-judicial, absolute immunity." *Keystone*, 631 F.3d at 100; *see also Brown v. Griesenauer*, 970 F.2d 431, 439 (8th Cir. 1992) ("political or electoral pressure alone cannot deprive government officials of absolute immunity").

### (4) Importance of Precedent

The fourth factor emphasizes the importance of precedent. "[T]he relevant question here [is] whether the [official]'s decisions are purely discretionary, or are constrained by outside law." *Dotzel*, 438 F.3d at 326-27. In *Keystone*, the court was satisfied that this factor supported immunity because the officials were required by law to employ statutorily delineated criteria to reach their decisions and to issue written decisions accompanying any final order. 631 F.3d at 99. Similarly, in *Dotzel*, the members of the municipal board who were entitled to immunity were required by statute to consider in their deliberations the standards set out in the relevant ordinance, and to explain their reasoning in written opinions. 438 F.3d 327. The *Dotzel* court found those procedures to be "quintessentially judicial."

Here, Commissioner Caride is bound by similar statutory requirements. *See* N.J.S.A. 52:14B-10(c) ("In reviewing the decision of an administrative law judge, the agency head may reject or modify findings of fact, conclusions of law or interpretations of agency policy in the decision, but shall state clearly the reasons for doing so . . . . [T]he agency head shall state with particularity the reasons for rejecting the findings and shall make new or modified findings supported by sufficient, competent, and credible evidence in the record."). Consistent with those

requirements, Commissioner Caride issued a 59-page written opinion as part of Decision and Order No. A18-111, detailing the legal and factual basis for modifying and rejecting the ALJ's findings and supporting her rulings. (Compl. Ex. B.) The opinion describes the evidence sought to be admitted and the legal standards that were applied by the ALJ. (*Id.* at 1-17.) It then details each parties' position as to each piece of evidence sought to be admitted. (*Id.* at 18-31.) Finally, Decision and Order No. A18-111 explains the factual basis established in the record below, and the legal basis to admit each piece of the evidence. (*Id.* at 31-59.) This factor weighs strongly in favor of immunity.

### (5) Adversarial Nature

The fifth factor examines the adversarial nature of the process. In *Butz*, the Supreme Court recognized that certain facets of the adversarial process "enhance the reliability of information and the impartiality of the decisionmaking process." 438 U.S. at 512. In *Dotzel*, the Third Circuit found that the proceedings at issue were "adversarial as a matter of law" because (1) "all interested parties [must] be given notice and an opportunity to attend," (2) ex parte contacts were prohibited, (3) witnesses could be cross-examined, and (4) the parties could challenge proffered evidence. 438 F.3d at 327. The court characterized these procedures as the "hallmarks of adversarial proceedings." *Id*.

Here, all of the adversarial elements that were identified in *Dotzel* are present. The parties to an OAL proceeding must be given "an opportunity for [a] hearing after reasonable notice," where they can "present evidence and argument on all issues involved" before an ALJ. N.J.S.A. § 52:14B-9(a), (c). The parties may "file exceptions, objections, and replies" and "present argument to the head of the agency" challenging the ALJ's recommendations and conclusions. N.J.S.A § 52:14B-10(c). In addition, where "an agency or agency staff is a party to a contested

11

case," as in the Administrative Action, the lawyers representing the agency in the proceedings "may not engage in ex parte communications concerning th[e] case" with the agency head, N.J.A.C. § 1:1-14.5, although such communications are permitted for the limited purposes of conferring settlement authority or to keep the agency head informed about the status of the case.

Plaintiff suggests that the interlocutory proceedings before Commissioner Caride were not truly adversarial because Commissioner Caride "acted as the investigator, prosecutor, and gatekeeper of evidence all at once," (Pl. Opp. at 13), and that her decision was a "predetermined outcome in favor of the agency over which she presides." (*Id*. at 18.) Although Commissioner Caride's decision did have the effect of favoring the agency that investigated and prosecuted the case against Plaintiff, and over which she presides, it was based entirely on the evidentiary record before the ALJ that was produced through an adversarial process. Moreover, a reading of Decision and Order No. A18-111 indicates that counsel for each party had a full opportunity to argue their respective positions in the interlocutory proceedings. The Court recognizes the possibility for some bias by Commissioner Caride in favor of the Department. However, Plaintiff has offered no factual foundation to suspect that the interlocutory proceedings in this case were anything but adversarial. Hence, this factor weighs in favor of immunity.

### (6) Appealability

The sixth and final factor involves the right of appeal. In *Dotzel*, the Third Circuit recognized that "[a] formal appellate procedure is probably the single most court-like feature a government body can have," explaining that many of the procedural safeguards integral to the quasi-judicial immunity analysis "exist largely to facilitate appellate review," and noting that "it is a hallmark of courts, unlike legislature and executives, that (with one exception) they do not consider themselves to be either final or infallible." 438 F.3d at 327.

Here, Plaintiff is entitled to appeal as of right to the Appellate Division of the New Jersey Superior Court, an independent judiciary, if he receives an adverse outcome in the Administrative Action. *See* N.J. Court R. 2:2-3(a) ("[A]ppeals may be taken to the Appellate Division as of right . . . to review final decisions or actions of any state administrative agency or officer.") He may also apply for leave to appeal an adverse interlocutory decision of an administrative agency. *See* N.J. Court R. 2:2-3(b). Indeed, Plaintiff has already sought leave to appeal Decision and Order No. A18-111, and although his request was denied by the Appellate Division, he is currently seeking leave to appeal that denial to the New Jersey Supreme Court. He will also presumably have a final opportunity to appeal as of right at the conclusion of the Administrative Action. This factor clearly weighs in favor of immunity for Commissioner Caride.

The Court finds that all but one of the factors weighs in favor of immunity for Commissioner Caride. As noted above, however, not every factor must be satisfied for an official to be entitled to quasi-judicial immunity. On balance, the factors support a finding that Commissioner Caride was serving a function comparable to a judge when she issued Decision and Order No. No. A18-111, and as such, quasi-judicial immunity shall attach.

**B.     Commissioner Caride Was Acting Within the Scope of Her Authority.**

Quasi-judicial absolute immunity extends broadly to all claims that relate to the exercise of sanctioned judicial functions. *Stump v. Sparkman*, 435 U.S. 349, 35-57 (1978) ("[T]he necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him . . . [T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge."). Thus, once a court deems that a public official performs functions comparable to a judge, the defendant "will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id*. The fact that the judge was incorrect about the status of jurisdiction or that there

were procedural errors causing the judge to act without jurisdiction does not satisfy the requirements for defeating immunity. *Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 771 (3d Cir. 2000) (stating "that a judge does not act in the clear absence of all jurisdiction when the judge enters an order at least colorably within the jurisdiction of her court even though a court rule or other procedural constraint required" a different action).

In this case, Plaintiff argues that Commissioner Caride "exceeded her legally recognized authority to review decisions of the ALJ" by issuing Decision and Order No. A18-111. (Pl. Opp. at 25-26.) More specifically, Plaintiff asserts that Commissioner Caride "ignored established precedent placing limits on her authority" and that, "under established law, Defendant is not empowered to disregard the credibility and evidentiary findings of the ALJ." (Pl. Opp. at 25-26.) In support of his argument, Plaintiff cites to several cases for the proposition that "that unassailable New Jersey law directs that the ALJ, as the gatekeeper of evidence in an OAL administrative proceeding, is better suited than an agency head who is not present at the hearing to evaluate the credibility, authenticity, and admissibility of proffered evidence." (*Id*. at 24.) The Court finds that these arguments are without merit.

Under the New Jersey Administrative Procedure Act, the parties to an administrative proceeding are entitled to a "recommended report and decision" by the ALJ. N.J.S.A. 52:14B-10(c). The recommended decision must state that it "may be adopted, modified or rejected by (the head of the agency), who by law is empowered to make a final decision in th[e] matter." N.J.A.C. 1:1-18.3(c)(12). The recommended decision must be filed with the agency head, who is then authorized to "adopt, reject or modify" the recommendations of the ALJ. N.J.S.A. 52:14B-10(c) and (d); N.J.A.C. 1:1-18.1(e). The agency head may also grant interlocutory review of decisions by the ALJ at the request of a party. N.J.A.C. 1:1-14.10. These provisions appear to confer

authority upon Commissioner Caride to modify the ALJ's evidentiary rulings. However, this Court need not make an explicit ruling regarding her authority or determine whether Commissioner Caride's decision was sound for the purposes of deciding immunity.[4] Even assuming the ALJ in the Administrative Action was "better suited" than Commissioner Caride to rule on the admissibility of evidence, Plaintiff cites to no law stating that Commissioner Caride acted in the "clear absence of all jurisdiction" by modifying the ALJ's rulings. Thus, the Court finds that Commissioner Caride acted within the scope of her authority by issuing Decision and Order No. A18-111.

## IV. CONCLUSION

In summary, the Court finds that Commissioner Caride performed functions comparable to that of a judge and acted within the scope of her authority when she modified the ALJ's evidentiary rulings.[5] Accordingly, she is entitled to absolute immunity from suit for issuing Decision and Order No. A18-111. For the above reasons, Commissioner Caride's motion to dismiss is **GRANTED.**

DATED: December 20, 2019

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

[4] If the Court were to find that the Commissioner were not entitled to quasi-judicial immunity when reviewing rulings of an ALJ, the Court might be required in certain cases to delve into the merits of the Commissioner's decision in connection with the adjudication of a plaintiff's federal claims. This would, of course, create the anomalous result of interfering with the appeals process in state court.

[5] The Court is well aware that the Supreme Court has advised that a finding of absolute immunity is not the "the norm," *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982), and that "[t]he presumption is that qualified rather than absolute immunity" applies for executive officials performing non-judicial functions. *Burns v. Reed*, 500 U.S. 478, 486 (1991). Because, here, Commissioner Caride's actions and function in reviewing the ALJ's rulings were judicial in nature, quasi-judicial absolute immunity applies.

15